**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OSBORNE, et al.,** | ) | **CASE NO.:1:11-CV-744-CAB** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **GERMAN, et al.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

  Before the Court is Defendant Corning Natural Gas Corporation's ("Corning") and Director Defendants' Motions to Dismiss. (ECF #13 and #14, respectively). Each requests dismissal under Fed. R. Civ. P. 12(b)(2),(3),(6) and 23.1. Each Motion also requests, in the alternative, transfer to the United States District Court for the Western District of New York. The Court has reviewed the Motions, Plaintiffs' Combined Memorandum in Opposition (ECF #21), Corning's and Director Defendants' Reply Briefs (ECF #22 and #23, respectively), Corning's Supplemental Brief (ECF #26), as well as Plaintiffs' Opposition to the Supplemental Brief (ECF #27) and Corning's Supplemental Reply Brief in Support (ECF

#28).  For the reasons set forth below, the Court GRANTS Defendants' Motions and dismisses the above captioned matter.

## I.  BACKGROUND

Defendant Corning is a small natural gas distribution company headquartered in Corning, New York.  The individually named Defendants are members of Corning's Board of Directors.  Plaintiff Osborne is Chief Executive Officer of Gas Natural, Inc. ("Gas Natural"), which is also a Plaintiff in this action.  Both Osborne and Gas Natural own Corning stock.  Under Osborne's direction, Gas Natural has sought to acquire natural gas utilities.  Corning was one such company targeted for acquisition.

Between October 2008 and March 2009, Energy West – Plaintiff Gas Natural's predecessor – submitted three non-binding offers to purchase Corning's issued and outstanding shares.  Each of those offers was rejected, and reported in SEC disclosures as against the best interests of Corning's shareholders.  On March 1, 2010, Energy Inc., a holding company for Energy West and a Gas Natural subsidiary, made another attempt to acquire Corning, submitting an offer to buy Corning's common stock at $25.00 per share, tendered in cash and Energy Inc. stock.  Accordingly, Corning's Board formed a committee to consider the offer and make a recommendation.

At that time, Corning was facing a cash shortage and considering its alternatives.  One option was to authorize a subscription rights offering to raise capital.  The offering allowed holders of Corning stock to purchase one share of stock for every ten shares already held at a price of $18.00 per share.  That option was approved by the Board on March 11, 2010, just ten days after receiving Energy Inc.'s offer.  After this authorization, Plaintiffs acknowledged

that the rights offering would change the per share price of the offer, and the offer must be adjusted accordingly.  Nonetheless, the offer still stood and Plaintiffs established a September 3, 2010 expiration date for the offer.

On August 13, 2010, Plaintiffs reiterated their offer in a letter to Corning's Board to which the Board requested an extension of time to consider the offer.  In response, Plaintiffs revoked the offer.

Plaintiffs filed a Complaint (ECF #1) against the Defendants in the Northern District of Ohio on April 15, 2011, alleging three claims: (1) "[p]laintiffs did not receive a fair portion of Corning's assets and were denied a value-maximizing transaction" when the Directors "summarily reject[ed] Plaintiffs' favorable tender offers (Compl. ¶41); (2) the subscription rights offering diluted Plaintiffs' ownership interest (Compl. ¶44); and (3) a derivative claim based on the same allegations.  Defendants have moved the Court for dismissal on four grounds rooted in the Federal Rules of Civil Procedure: (1) lack of personal jurisdiction; (2) improper venue; (3) failure to state a claim; and (4) failure to make a demand on Corning pursuant to a derivative claim.  In the alternative, Defendants have moved the Court to transfer venue pursuant to 28 U.S.C. § 1404(a), to the Western District of New York.

## II.  PERSONAL JURISDICTION

In a case before a federal court upon diversity jurisdiction, the Court looks to the law of the forum state to determine whether personal jurisdiction exists.  *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota,* 545 F.3d 357, 361 (6th Cir. 2008).  The Court applies a two-step inquiry when examining if it has personal jurisdiction over the parties. "First, we must determine whether Ohio law authorizes jurisdiction.  If it does, we must determine whether

that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Id.* Where personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff has the burden of establishing that jurisdiction exists. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). Because the Court is deciding Defendants' motions solely on the written materials, Plaintiff is only required to make a prima facie showing that personal jurisdiction exists. *Id.* at 1168-69. In addition, since the Court finds no need for an evidentiary hearing, "the burden of the plaintiff is relatively slight" and the Court must construe the pleadings and affidavits in the light most favorable to Plaintiff. *Id.* at 1169.

**A. Ohio's Long Arm Statute**

The Ohio Supreme Court has held that Ohio's Long-Arm statute does not extend the jurisdiction of Ohio courts to the limits of constitutional due process. *See Goldstein v. Christiansen,* 638 N.E.2d 541 (Ohio 1994). Thus, in order to comport with the Ohio Supreme Court's decision, it is necessary to analyze whether personal jurisdiction is proper under Ohio's Long-Arm statute prior to considering whether personal jurisdiction may be exercised consistent with constitutional due process. *See Matrix Essentials, Inc. v. Harmon Stores, Inc.,* 205 F.Supp.2d 779, 785 (N.D. Ohio 2001).

The pertinent section of the Ohio Long-Arm statute, O.R.C. § 2307.382(A), allows personal jurisdiction over out-of-state defendants when the cause of action arises from "transacting any business in this state." "The phrase 'transacting any business' is broad and encompasses more than 'contract.'" *Clark v. Connor,* 695 N.E.2d 751, 755 (Ohio 1998). To

bolster this contention, Plaintiffs argue that mere negotiations in Ohio are sufficient to qualify as transacting business, citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 559 N.E.2d 477, 480 (Ohio 1990) ("Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, " * * * means to *prosecute negotiations;* to carry on business; *to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis in original)).

Plaintiffs identify five actions taken by Defendants either in Ohio or directed toward Ohio as the basis of their assertion of this Court's jurisdiction over Defendants:  two visits to Ohio to discuss the merger by Mr. German, in his capacity as President and CEO of Corning, as well as a representative of the other Board members; two letters sent by Mr. German to Mr. Osborne's Mentor, Ohio office in response to merger offers; and a letter sent by Mr. Welch, as a member of the Board, to Mr. Osborne's Mentor office requesting an extension of time to consider the merger offer.  In addition, Plaintiffs offer *NPF XII, Inc. v. Special Care, Inc.,* No. 00-CV-1048, 2001 U.S. Dist. LEXIS 24347 (S.D. Ohio July 17, 2001) as a model for the case at bar. In *NPF,* defendant conducted telephone calls and other correspondence with the plaintiff, an Ohio company, and also previously visited the state on two occasions regarding business dealings with NPF predecessors.  The *NPF* court found that those contacts were sufficient to assert personal jurisdiction under *Kentucky Oaks. Id.* at *9.

One factor in the case at bar that differs from the facts in both *Kentucky Oaks* and *NPF* is that in each of those cases agreement was ultimately reached.  For example, in *Kentucky Oaks* the court explained:

> Mitchell's negotiated the lease by telephone contact to Ohio with an Ohio-based limited partnership. Mitchell's intentionally and voluntarily entered into a ten-year contract by signing the document in Georgia and mailing it to Ohio. The document creates ongoing duties and obligations for the life of the contract. Undoubtedly, both parties sought the benefit of each other's bargain in hopes of realizing a pecuniary gain. The fact that Mitchell's maintained no physical presence in Ohio does not preclude a finding that it transacted business in this state.
>
> Thus, we are convinced that Mitchell's conduct falls unequivocally within the plain and broad language of R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1). Similarly, our finding is reinforced by the fact other courts have passed on this issue reaching the same result, to-wit: that a lease agreement, in certain circumstances, is "transacting business" within the forum state's long-arm statute.
>
> Accordingly, we hold that a commercial nonresident lessee, for purposes of personal jurisdiction, is "transacting any business" within the plain and common meaning of the phrase, where the lessee negotiates, and through the course of dealing becomes obligated, to make payments to its lessor in Ohio.

*Kentucky Oaks* at 480 (citations omitted). While the *Kentucky Oaks* court may have considered mere negotiation of a contract potentially sufficient to qualify as "transacting business" under Ohio's Long-Arm statute, it did not do so explicitly. Mitchell's conduct included both negotiation and consummation of a contract, and the *Kentucky Oaks* court did not differentiate between the two acts. Further, it explicitly held that when a party "through the course of dealing becomes obligated" to a party in Ohio, it is subject to personal jurisdiction in Ohio. *Id.* Absent obligation, no authority has held that mere negotiations are sufficient to establish personal jurisdiction.

Recently, "courts have identified two factors that help determine whether an out-of-state defendant 'transacted business' within the meaning of the long-arm statute." *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC,* No. 5:09-CV-2613, 2011 U.S. Dist. LEXIS 17022 at *12 (N.D. Ohio Feb. 22, 2011) (citations omitted). "The first factor is whether the out-of-state defendant initiated the

-6-

dealing.  If it were the defendant who 'reached out' to the forum state to create a business relationship, the defendant has transacted business within the forum state.  The question of who initiates the contact, however, is but one factor to be considered and the determination is not always dependent upon who initiates the contact." *Id.* at *12-13.  In the case at bar, Plaintiffs were the initiators of the transaction – offering to purchase Corning on multiple occasions.  Defendants were in every instance simply responding to the offer.  Although not dispositive, it is one factor which augurs against the Court finding personal jurisdiction over Defendants.

"The second factor is 'whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state.'  If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio.  However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute 'transacting business.'  'Rather, there must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.'" *Id.* at *14-15 (citations omitted).  The Court finds the logic of *Hitachi* compelling.  Mere negotiations may subject a non-resident to personal jurisdiction if the provisions of the negotiated agreement would have affected Ohio.  Plaintiff has not shown, through argument or evidence, how the contemplated merger would have affected Ohio.  Corning is a New York company, with New York customers and New York employees; coming under new ownership would not affect Ohio.  The lack of obligation in Ohio, combined with the fact that the contemplated

agreement would have had no effect on Ohio, leads the Court to find that Defendants are not subject to Ohio's Long-Arm statute.

**B. Due Process**

Although the Court has already found that Defendants are not subject to Ohio's Long-Arm statute, if *arguendo* they were, asserting personal jurisdiction would still be inappropriate. The Sixth Circuit employs a three-prong test to determine whether specific jurisdiction may be exercised consistent with the Due Process Clause of the Fourteenth Amendment. First, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Southern Machine Co., v. Mahasco Ind.,* 401 F.2d 374, 381 (6th Cir. 1968). Second, "the cause of action must arise from the defendant's activities there." *Id.* Finally, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection to the forum to make the exercise of jurisdiction over the defendant reasonable." *Id.* Plaintiffs fail to offer sufficient facts to prove that Defendants have purposefully availed themselves of the privilege of conducting business in Ohio.

"The purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction." *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000). It "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 721-22 (citation omitted). In fact, the *Calphalon* court found that facts very similar to the case at bar did not rise to purposeful availment:

> In this case, the agreement and previous association between Calphalon and Rowlette centered on Rowlette representing Calphalon in the states of

> Minnesota, Iowa, South Dakota, North Dakota, and Nebraska. Rowlette's performance of the agreement was not focused on exploiting any market for cookware in the state of Ohio. Moreover, Rowlette's phone, mail, and fax contact with Calphalon in Ohio and J. Rowlette's physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there. Arguably, Rowlette would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operation. Thus, Rowlette's contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction.

*Id.* at 723 (citation omitted).

Similar to the defendant in *Calphalon,* the Defendants in the case at bar did not seek to further their business in Ohio. Any contact with Ohio, whether by phone, mail, email, fax, or physical visit, was a consequence of the location of Mr. Osborne's offices, not because of any intention to do business in Ohio. Therefore, like *Calphalon,* this Court holds that asserting personal jurisdiction over Defendants on these random, fortuitous, and attenuated grounds would prove too insubstantial to comport with constitutional due process.

### III. VENUE AND OTHER ARGUMENTS

Because this Court lacks personal jurisdiction over the Defendants any consideration of venue or other arguments is moot, including the issue of transfer. *See Pittock v. Otis Elevator Company,* 8 F.3d 325, 329 (6th Cir. 1993) ("[A] transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants.")

## IV. CONCLUSION

The Court finds that Ohio's Long-Arm statute does not reach Defendants who merely contemplate, but do not consummate, agreements devoid of provisions that affect Ohio. In addition, exerting personal jurisdiction over Defendants engaged solely in negotiations that either take place in Ohio, or are conducted between an Ohio resident and a non-resident, would not comport with constitutional due process. Therefore, the Court GRANTS Defendants' Motions and dismisses the above captioned matter.

**IT IS SO ORDERED.**

**DATE: March 23, 2012**

      **S/Christopher A. Boyko**
      **CHRISTOPHER A. BOYKO**
      **United States District Judge**